## *ANDREWS & AL. vs. D. ACKERSON.*

APPEAL from the court of the fifth District, the judge of the District presiding.

PORTER J. delivered the opinion of the court. The plaintiffs, one of whom is a minor, above the age of puberty, assisted by his curator *ad litem*, stated that in 1819, their mother died, leaving them her heirs. That an inventory of her estate was made by the court of probates, and afterwards sold for $30,131, 37. That their father never took any measures to have himself appointed tutor or curator of either of the petitioners, who were then both under age, and disposed of the property of the community between him and their mother, without convening any family meeting, or taking any other legal step, than procuring an appraisement and inventory of the estate, as is seen by the *proces verbal* of the sale.

Where a creditor of a community gives a release of his claim to the surviving husband of that community, and takes a new obligation and mortgage from the husband, on lands purchased by him at the sale of the community property, such creditor must look to the husband exclusively and individually for his debt.

The creditor, by releasing his community debt, and consequently his prior mortgage on the community property, and taking a new obligation and mortgage, *lets in the tacit mortgage* of the heirs of the wife, on the property first mortgaged, which attaches

West'n. District.
*Sept'r.* 1829.

ANDREWS & AL.
*vs.*
ACKERSON.

and becomes superior.

The heirs of the community in right of their mother, cannot be affected by the original claim of the *creditor* against the community, after having released the community in favor of the surviving husband, because by such release the husband got credit as having discharged a community debt to that amount.

If the heirs could now be charged & compelled to pay the debt, thus released by the creditor of the community in favor of their father, they would be *twice* charged with it—having allowed it in the liquidation of their claims against their father in the probate court.

Third persons, who are strangers to the parties, buying property at a judi-

That the petitioners never having received any part of their said mother's estate, or any account thereof, instituted a suit in the month of February 1828, against their father for the settlement of the affairs of the succession, and the community that had existed between their parents, and had judgment in the court of probate for $3,843 with interest and costs, and issued execution, which remains unsatisfied.

That they have a mortgage on the real property of their father, and the defendant; that since their mortgage attached on their father's property, a fi. fa. issued on a judgment of the district court against their father, and several tracts of land, then belonging to their father, was sold and purchased in by defendant.

That the petitioners have given notice to the defendant of the existence of their claim against their father, of its nature and of the mortgage consequently resulting therefrom, on the premises.

The petition concludes with a prayer, that unless the defendant satisfy their said claim, interest, and costs, the premises may be sold therefor.

The defendant pleaded discussion—his plea was overruled. He next pleaded the general issue and that in 1818 and previous to the petitioner's mother's death, he sold to their father a tract of land which now constitutes part of a larger tract and owned by the defendant, and on which the petitioners seek to exercise their right of mortgage—that the petitioners' father promised to pay $3000 for the said land, thus purchased from the defendant in three annual instalments, with the faculty of prolonging the time of payment during four years on payment of interest at the rate of ten per cent, the defendant reserving to himself a mortgage till complete payment.

The defendant further pleaded that in 1819 he sold to the petitioners' father two slaves for the sum of $1600 payable also in three annual instalments, with faculty of prolonging payment four years on payment of interest at the rate of ten per cent, reserving to himself a mortgage till complete payment:—And afterwards the petitioners' father sold one of these slaves to one Rees for $800, payable in three annual instalments.

The defendant admitted, that after the petitioners' mother died, an inventory, ap-

West'n. District.
Sept'r. 1829.

ANDREWS & AL.
vs.
ACKERSON.

cial sale, belonging to minors, can compel such minors to refund the *price*, on setting aside the sale as illegal, where the purchase money has been applied to their use.

But the case is different where a creditor releases a community debt, and takes a new obligation and mortgage from the surviving husband, who sells such mortgaged property to pay the debt—here, by the release the husband was allowed the amount of the debt in his settlement with the heirs of the mother; and in enforcing their tacit mortgage on such property, are not bound to repay the creditor who was purchaser, the price he had given.

Property purchased at the sale of a succession by the husband becomes liable in his hands as natural tutor to the heirs, for

West'n. District.
*Sept'r.* 1829.

ANDREWS & AL.
*vs.*
ACKERSON.

the amount of their claims in right of their deceased mother.

The enforcing such mortgage on the property does not rescind the sale of it to a creditor of such husband, but on the contrary, affirms it.

A creditor releasing a privileged claim against a partnership, in favor of one of the partners, thus enabling him to deduct the amount in a settlement with his co-partners, such creditor *cannot* compel the latter to reimburse their part of the sum so released, before they can enforce a previous lien, on the thing newly mortgaged and which was given in payment.

The remedy of the creditor is against the partner he trusted; because by his act, his right against the community or partnership is *extinguished;* and if it revives by evic-

praisement and sale of her estate took place as stated in the petition. That the said sale extended to all the property of the community and included the land purchased from the defendant, and one of the said slaves: that at the said sale the petitioners' father purchased part of the property and particularly the land on which they seek to inforce the mortgage.

That afterwards the petitioners' father, desirous to be relieved from the defendant's mortgage on the land and slaves purchased from the latter, proposed, on a release being received, to give a mortgage on the property he had purchased at the sale of the estate of the community; to which the defendant assented; and this was executed: and thro' the fraud of the petitioners' father, and the error or mistake of the defendant, in the release, payment of the sum due to the latter was acknowledged, tho' not received.

The defendant further pleaded, that the new mortgage was given for $4600, without including the interest; and payment was stipulated in two years, with the faculty of a prolongation of the time of payment of interest at the rate of ten per cent: but the petitioners' father absolutely neglecting to pay, the defendant instituted suit against him, in consequence

of which the premises were sold and bought by the defendant.

The petitioners' father was cited in warranty, failed to answer, and judgment was taken against him by default: there was judgment for the petitioners against the defendant, and for him against the petitioners' father.

From this judgment the defendant appealed. The facts, both in the petition and answer, except the allegation of fraud in the father, and error or mistake in the defendant, as alleged in the answer, are correctly stated.

It is not contended that the district court erred in ordering a sale of the premises, but the appellant's counsel urges, that the petitioners ought to have been compelled to indemnify the defendant for the amount of the sum for which he was a creditor of the community, according to a principle often recognized by this court, viz:—that in setting aside an illegal sale in favor of a minor, he ought to be allowed whatever the vendee paid in discharge of the minor's debts. But in the present case the appellees contend, that by giving an absolute receipt for his claim, the defendant has rendered them the debtors

tion, it revives only against him whose note was taken for the original debt.

of their father, who has had the benefit of the acknowledged payments, in the same manner as if he had actually made it. The appellees, were they compelled to pay the defendant, would be twice charged with the same debt: and the appellant must impute it to his own imprudence, that he has transferred his claim to the petitioners' father, who has thereby been enabled to retain its amount from them.

This case is different from that of a third person who purchases, at a judicial sale, the property of minors; and whose money is applied to the payment of a debt due by them. He is a stranger to the acts by which their interests are affected. It is therefore equitable—as it is the law, that the money which was applied to the payment of their debt, should be repaid by them, before they get back that thing, for which the money was given. In the present instance the creditor himself entered into a transaction, by which he discharged the debt, and acknowledged the tutor had paid him. He thus furnished the latter with the means of claiming a sum from the minors, and the court of probates on settlement allowed him credit for the amount.

It is therefore proper he should look to the tutor for reimbursement.

This is not a case of restitution *in integrum.* The property, belonged to the succession, and as making part of it, was sold. At the sale, the father of the minors became the purchaser, and as his property, it became liable to the mortgage which the law conferred in their favor, on the estate of their tutor. The enforcing of this mortgage does not rescind the sale, but on the contrary affirms it. The mortgage, given by the tutor to secure a debt of the community, and a sale under it, did not destroy the plaintiffs' mortgage.

The question, therefore, before us, is whether a creditor, who has given a complete discharge to one of the partners, and by virtue of it, enabled that partner to deduct the amount on settlement with his co-partners, can compel the latter to reimburse their part of the sum, before they can enforce a previous mortgage which they had on the thing given in payment; and we are of opinion he cannot. That his remedy is against the partner he trusted. The right was once extinguished by the act of the creditor as against the community, and it revives by

ANDREWS & AL.
*vs.*
ACKERSON.

eviction, against him whose note was taken, in place of the original debt.

It was not the property of the community which was mortgaged to secure the debt, but the property of the father, who had purchased from the community.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.

*Garland,* and *Bowen,* for the plaintiffs.— *Brownson,* for the defendant.